IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PASADENA SELF-STORAGE, LTD., | § | CASE NO. 10-33790 |
| | § | (Chapter 11) |
| DEBTOR. | § | |
| CITY NATIONAL BANK, Successor in Imperial Capital Bank, | § § § | |
| MOVANT, | § § | |
| VS. | § § | CONTESTED MATTER |
| PASADENA SELF-STORAGE, LTD., | § § § | |
| RESPONDENT. | § | |

**CITY NATIONAL BANK'S MOTION TO LIFT THE
<u>AUTOMATIC STAY AGAINST PASADENA SELF-STORAGE, LTD</u>**.

THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY.  IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS.  IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE.  IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING.  IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING.  EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

THERE WILL BE A HEARING ON THIS MATTER ON **JULY 2, 2010** AT **9:00 A.M.** IN COURTROOM 404, 515 RUSK, HOUSTON, TEXAS 77002.

COMES NOW, City National Bank, successor to Imperial Capital Bank, ("CNB") and files its Motion to Lift the Automatic Stay Against Pasadena Self-Storage, Ltd. (the "Motion") and would show the Court as follows:

1.     On May 4, 2010, Pasadena Self-Storage, Ltd. ("Pasadena" or the "Debtor") filed for protection under Chapter 11 of the United States Bankruptcy Code.

2.     As of June 7, 2010, CNB is owed $2,779,960.49 ($2,585,452.30 in principal and $194,508.19 in accrued and unpaid interest), pursuant to a promissory note executed by the Debtor.  Interest continues to accrue as do costs (including attorney fees).  A copy of the Promissory Note is attached hereto as **Exhibit A**.  The Deed of Trust, Fixture Filing, Assignment of Rents, and Security Agreement securing the Promissory Note and filed of record with the Harris County Clerk under file number 20080519462 is attached hereto as **Exhibit B**.  The real property securing the Promissory Note is 6321 Spencer Highway, Pasadena, Texas, being a 5.1757 acre tract of land out of part of Lots 31 and 32 of Iowa Gardens Addition as recorded in Vol. 3, page 4 of the map records of Harris County, Texas (the "Real Property").

3.     The Debtor, by and through its authorized representative, has reflected, on its Schedule D – Creditors Holding Secured Claims (Docket No. 23), that the value of the Real Property is $2,800,000.00.  The Harris County Tax Assessor has valued the Real Property for the tax year 2010 at $2,573,566.00 and the Debtor, upon information and belief, is protesting that valuation.  Mr. Limer testified at the creditors meeting, on behalf of the Debtor, that the Debtor is protesting the tax valuation.

4.     Upon information and belief, this bankruptcy case is a single asset real estate case that was filed for the sole purpose of preventing a non judicial foreclosure sale from occurring on May 4, 2010.  *See*, ¶7 of the Debtor's Emergency Motion for Authority to Use Cash Collateral (Docket No. 8).  The filing of a bankruptcy case merely to prevent foreclosure, without the ability or the intention to reorganize is an abuse of the Bankruptcy Code.  *Weiszhaar Farms, Inc. v. Livestock State Bank,* 113 B.R. 1017, 1020 (D.S.D.1990); *Cinema Service Corp. v. Edbee*

*Corp.,* 774 F.2d 584, 585-86 (3d Cir.1985); *Roberts v. Heim,* 184 B.R. 814, 818 (N.D.Cal.1995); *In re Huerta,* 137 B.R. 356, 369 (Bankr.C.D.Cal.1992); *In re Trina Associates,* 128 B.R. 858, 872 (Bankr.E.D.N.Y.1991).

5. The ad valorem taxes on the Real Property remain due and owing by the Debtor for 2008 and 2009 in the amount of $141,994.63 plus penalties and interest as they continue to accrue. *See*, Debtor's Schedules (Docket No. 23). The taxes for 2009 were in the amount of $70,439.91. Therefore, assuming 2010 taxes are what they were in 2009, then half of a year's worth of taxes, or about $35,219.95 has accrued. The secured tax claim on the Real Property is approximately $177,214.58. Total secured claims against the Real Property are approximately $2,957,175.07. All liens are considered in determining whether the debtor has equity in the property. *In re Indian Palms Assoc., Ltd.*, 61 F. 3d 197 (3rd Cir. 1995).

6. Based on the foregoing, CNB asserts that the Debtor does not have any equity in the Real Property. There is no reasonable prospect for a successful reorganization. As Judge Ayers has stated:

> The answer is clear: *Little Creek* deals with cases that have little or no legitimate prospect for reorganization-either actual reorganization or chapter 11 liquidation. It encourages courts to grant relief from stay or to dismiss those cases. Judge Jones, in *Little Creek,* believed that such an approach is justified to prevent "abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes." *In re Little Creek Development Co.,* 779 F.2d at 1072. A finding of bad intent is not necessary, however:
>
> Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria." The Sixth Circuit in [*In re*] *Winshall Settlor's Trust,* 758 F.2d [1136] at 1137 [(6th Cir.1985) ], aptly noted that

3

> [t]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. *See In re Dolton Lodge Trust No. 35188,* 22 B.R. 918, 922 (Bankr.N.D.Ill.1982) "[I]f there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost is *raison d'etre....*" *In re Ironsides, Inc.,* 34 B.R. 337, 339 (Bankr.W.D.Ky.1983).
>
> Neither the bankruptcy courts nor the creditors should be subjected to the costs and delays of a bankruptcy proceeding under such conditions.
>
> *Id.* at 1073.
>
> The Court may, therefore, dismiss or grant relief from the stay upon a finding of intent or upon a finding of no prospect for reorganization. *See e.g., In re Fry Road Assoc's., Ltd.,* 66 B.R. at 606-07.

*In re Oakgrove Village, Ltd.*, 90 B.R. 246, 249 (Bankr. W.D. Tex. 1988). Likewise, here there is no business to reorganize. The Debtor is a single interest entity which according to Mr. Limer has no employees. The employees on site are contract employees and the back office employees are employees of the management company, Silver Oak Investment.

7.  Pasadena is receiving monthly rent payments from the tenants who rent the storage units and has enough money to pay the taxes, unsecured creditors and the monthly note to CNB. However, the management has gutted the Debtor of its resources for the benefit of the insiders. David L. Davies and Nicholas Limer each withdrew $158,656.50 in January 2010 as "buyback for re-sale." *See*, the Debtor's response of question 23 of the Debtor's Statement of Financial Affairs (Docket No. 24). By withdrawing a total of $317,317.00, the Debtor was left painfully short of the money needed to pay the CNB note, the ad valorem taxes and the unsecured creditors. The actions of Mr. Davies and Mr. Limer (who upon information and belief are the principals in one of the Debtor's limited partners, Silver Oak Investments) resulted in the Debtor being unable to pay its monthly expenses. Silver Oak Investments is also the

management company for the Pasadena Real Property; and Silver Oak Investments caused a $510,667.67 loan to be made to Cypresswood Self Storage, which is also in bankruptcy before this Court (Case No. 10-32976). See, Debtor's Schedule B, Response to #18 (Docket No. 23). Additionally, Silver Oak Investments owes the Debtor approximately $287,719.95. *See*, Debtor's Schedule B, Response to #1 (Docket No. 23).

8. CNB seeks relief from the stay for a) cause; b) lack of equity and not necessary for effective reorganization; and c) because the case is a single asset real estate case and the Debtor cannot provide adequate protection pursuant to 11 U.S.C. §362(d)(1), (2) and (3), which provide as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if--
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization;
>
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later--
>
> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>
> (B) the debtor has commenced monthly payments that--

> (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and
>
> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate; or

11 U.S.C. § 362(d)(1), (2) and (3).

9. In the event the Debtor decides to ignore its prior valuations and assert that CNB is oversecured, then CNB asserts that the stay should be lifted for cause, including the lack of adequate protection. The bankruptcy filing has shifted, inappropriately, the risks of the reorganization to CNB. Interest and costs continue to accrue not only on the debt due CNB, but also on the debt due to the taxing authorities.

10. The management company, Silver Oak Investments, is owned and operated by Messrs. Davis and Limer and they have caused approximately $320,000.00 to be repaid to them ahead of non-insider creditors. There is another $280,000.00 note due from Silver Oak Investments to the Debtor, a $510,000.00 loan to an affiliate, as well as a year's worth of rental income that is not accounted for. In short, there is over a $1,000,000.00 transferred from the Debtor to insiders and/or affiliates ahead of the payment of legitimate creditor claims. Thus, Debtor's counsel has a conflict, in that Silver Oak Investments paid his retainer, yet he will be required to collect the $320,000.00 which was subsequently paid to Davis and Limer via Silver Oak Investments and to collect the Silver Oak Investments note. Mr. Limer testified at the creditors meeting that such action would be a problem. Additionally, counsel has represented both this Debtor and Cypresswood.

11. If there is equity above the liens then CNB should receive adequate protection payments of at least $16,252.44 a month to prevent any further interest accrual. Additionally, the current taxes of at least $11,739.99 ($70,439.91 divided by 6 months) should be escrowed; and the penalty and interest on the delinquent taxes should be escrowed. Assuming an effective rate of 20%, that is approximately $2,366.57; however, there is insufficient cash flow to pay current expenses and to make these payments based on the Debtor's budget. The Debtor anticipates monthly receipts of $42,320.00. *See*, 90 day budget attached to cash collateral order (Docket No. 28). The allowed expenses are $16,483.00 *Id*. leaving $25,837.00 to pay adequate protection payments of $30,359.00. All the risks of this reorganization are shifted to the secured creditors, principally City National Bank.

**No Equity/Not Necessary**

12. As demonstrated above, the Debtor lacks equity in the Real Property. The bankruptcy filing was to prevent a foreclosure and to allow the Debtor to sell the Real Property; however, all of the risks of the reorganization have been thrust upon CNB. The fraudulent transfers immediately before the filing of this case, the loan to an affiliate without collateral or an ability to repay, and the loan to the management company do not justify this management being entitled to shepherd this Debtor through the reorganization case. This is the kind of scenario that Judge Jones in the *Little Creek* decision declared should be scrutinized by the Bankruptcy Court.

**Single Asset Real Estate**

13. This is a single asset real estate case. The Debtor has not commenced monthly payments although the Debtor has admitted the case is a single asset real estate case. *See*, Voluntary Petition (Docket No. 1). The Debtor's budget will not support the adequate payments as described above and as required by §362(d)(3). A plan of reorganization in this case is highly

7

improbable due to the insufficient cash flow and management's imprudent acts and fraudulent transfers.

WHEREFORE, PREMISES CONSIDERED, City National Bank requests that the Court grant its Motion to Lift the Automatic Stay Against Pasadena Self-Storage, Ltd. and that it be allowed to pursue its state law remedies with regards to its collateral.

Respectfully submitted this 9th day of June, 2010.

                HIRSCH & WESTHEIMER, P.C.

                By:  /s/ Michael J. Durrschmidt
                      Michael J. Durrschmidt
                      Texas Bar No. 06287650
                      700 Louisiana, Floor 25
                      Houston, Texas 77002
                      Telephone: 713-220-9165
                      Facsimile:  713-223-9319
                      E-mail: mdurrschmidt@hirschwest.com

Attorneys for City National Bank

## CERTIFICATE OF CONFERENCE

I hereby certify that on the 8th day of June, 2010, the undersigned advised Patrick Devine, counsel for the Debtor, that City National Bank would be filing the motion to lift during and after the Debtor's creditors meeting and Mr. Devine is opposed.

                      /s/ Michael J. Durrschmidt
                      Michael J. Durrshmidt

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of June, 2010, a copy of the foregoing City National Bank's Motion to Lift the Automatic Stay Against Pasadena Self-Storage, Ltd. was served via first class mail, postage prepaid and/or via the Clerk of the Court through the ECF system to the parties on the attached service list.  Movant certifies that Movant has complied with Bankruptcy Local Rule 4001.

                      /s/ Michael J. Durrschmidt
                      Michael J. Durrschmidt